

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-17-2005

# Dougherty v. Stickman

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2286

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Dougherty v. Stickman" (2005). *2005 Decisions.* Paper 220.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/220

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-2286
_____

JOHN VINCENT DOUGHERTY,
Appellant

v.

WILLIAM STICKMAN;
DISTRICT ATTORNEY OF THE COUNTY OF ALLEGHENY;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 02-cv-01830)
District Judge:  The Honorable Arthur J. Schwab
_____

ARGUED OCTOBER 21, 2005

BEFORE: SMITH, BECKER, and NYGAARD, <u>Circuit</u> <u>Judges</u>.

(Filed November 17, 2005)
_____

R. Damien Schorr, Esq. (ARGUED)
1015 Irwin Drive
Pittsburgh, PA 15236
          <u>Counsel for Appellant</u>

Ronald M. Wabby, Jr., Esq. (ARGUED)
Office of the District Attorney

401 Allegheny County Courthouse
Pittsburgh, PA 15219
        Counsel for Appellee

_____

OPINION OF THE COURT

_____

NYGAARD, <u>Circuit</u> <u>Judge</u>.

While being transferred to a different section of the prison where the Petitioner John Vincent Dougherty was serving a life sentence for murder, Dougherty assaulted several prison guards with a "shank" – a home-made knife. He was charged with three counts of assault by a life prisoner in violation of 18 Pa. Cons. Stat. Ann. Section 2704. Although he argued self-defense (that the prison guards were "out to get him"), a jury convicted him on all counts. The Pennsylvania trial court ordered him to serve the first of three life sentences consecutive to his previously imposed life sentence. After exhausting his available state court remedies, Dougherty filed a *pro se* petition for a writ of habeas corpus in the United States District Court for the Western District of Pennsylvania. Upon the recommendation of United States Magistrate Judge Amy Reynolds Hay, the District Court denied relief.

We granted a certificate of appealability limited to the question of whether the Appellant's trial counsel "provided ineffective assistance counsel for failing to investigate defenses and conduct sufficient pre-trial investigation (including the claim

2

that defense trial counsel failed to obtain a surveillance video, which may have captured the incident on tape). We evaluate defense counsel's performance under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), and more recently *Rompilla v. Beard*, 545 U.S. ---, 125 S.Ct. 2456 (2005). We will affirm.

I.

Ineffective assistance of counsel claims are regular grist for the habeas corpus mill. These claims arise from the Sixth Amendment right of criminal defendants to the "assistance of counsel," a right that would be of little value unless it also guaranteed "effective" assistance of counsel. Dougherty's entitlement to habeas relief requires that he demonstrate that the state court decision was the result of an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. 42 U.S.C. § 2254(d)(1). An "unreasonable application" occurs when a state court identifies the correct governing principle from the Supreme Court's decisions, but unreasonably applied that principle to the facts of a petitioner's case. *See Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527 (2003).

Under the standards set forth by the Supreme Court in *Strickland*, ineffective assistance of counsel is defined as deficient performance by counsel resulting in prejudice. Counsel's performance is measured against an objective standard of reasonableness under prevailing professional norms. In measuring counsel's performance, we apply a heavy measure of deference to counsel's judgments. *Strickland*,

104 S.Ct. at 2066.

If his attorney's performance was constitutionally deficient, the petitioner must then show "that there is a reasonable probability that, but for counsel's unprofessional efforts, the result of the proceeding would have been different." *Id.* In this context, a "reasonable probability" is one that undermines confidence in the outcome of the trial. *Id.* Under *Strickland*, prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 104 S.Ct. at 2053. To satisfy this test, it must be shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Ultimately, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*

## II.

In his PCRA petition, Dougherty argued that counsel failed to interview witnesses in preparation for trial. More specifically, he claims that at the time of his preliminary hearing, he informed his public defender that there were defenses that needed to be investigated. He did not see an attorney again for more than a year, until his first trial, which ended in mistrial. He claims he and his attorney, Kathleen Cribbins, met for only

4

five to fifteen minutes the morning of the trial. There has been no evidentiary hearing on the claim, so there are no findings as to what extent the attorney prepared for trial. Although counsel might not have interviewed witnesses in advance of trial, the record indicates that the trial court gave defense counsel a short period of time on the day of trial to question the witnesses before presenting them.[1] Nonetheless, Dougherty does not show how he was prejudiced by this last minute preparation. His attorney did present two witnesses on his behalf who testified that they had overheard that the guards were out to get him. Dougherty did not present the PCRA court with the names or a proffer of the testimony of any other witnesses. Finally, Dougherty told the trial court that there were no other witnesses he wanted defense counsel to call. Trial Transcript at 148.

Dougherty also complains the sweatshirt he was wearing was cut off of his back, proving that the guards had a weapon, and that a surveillance video existed, which his attorney failed to obtain.[2] The PCRA court concluded that Dougherty's attorney was not ineffective in failing to obtain the sweatshirt, because even if it was torn, that would not prove that the guards instigated the attack. We do not think that this is an unreasonable

---

1. At a lunch break on the day of trial, Dougherty's attorney informed the court that she hadn't had a chance to interview the defense witnesses yet, as she had just gotten the names the previous day. She asked the court "to indulge the defense to the point where we can interview those witnesses," and the court said it would work with her on that. Trial transcript at 68-69.

2. There is even some disagreement as to whether the video tape in question is a surveillance video tape or a video tape record of the crime scene. Dougherty's failure to establish the nature of the videotape supports our holding that his prejudice claim is speculative.

conclusion.

Dougherty contends that "[t]he videotape could have established that [his] claim was true." (Appellant's Br. at 18.) He briefly contends that the tape was the "one piece of evidence" that could have provided "independent verification" of Dougherty's version of events. The PCRA court did not comment on the video. Dougherty argues that the video would show that he acted in self-defense. Although he did not make that claim before the PCRA court, we can infer that the only reason he would want his attorney to obtain the video is because it would be favorable to his defense. Dougherty claims that when he asked his attorney to get the video, she said it had probably been erased. We are troubled by counsel's failure to attempt to get the video. This would have been unreasonable. However, the Magistrate Judge stated that "even assuming, for the sake of argument, that his trial counsel should have obtained and reviewed the items in question, petitioner has failed to show that he was prejudiced by his counsel's conduct." We agree. Dougherty testified before the jury that he acted in self-defense. It did not credit his version of events, but instead believed the testimony of the guards. Whether the video would show anything that would change the jurors' minds is speculative. Moreover, the burden was on Petitioner Dougherty to put forth some type of admissible evidence to establish what the tape would have shown. He has not done so.

## III.

In sum, although defense counsel's performance was unsatisfactory, Dougherty

6

has not been prejudiced.  The order of the District Court denying the writ is affirmed.